UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSHUA FORD,<br><br>    Defendant | CRIMINAL No. 1:23-cr-10235 RGS |

**MEMORANDUM REGARDING BASES FOR A DETENTION HEARING AND MOTION FOR PRETRIAL DETENTION**

The United States has charged defendant Joshua Ford ("the defendant") with three counts of transmitting a threatening communication in interstate commerce, all violations of 18 U.S.C. § 875(c). The charged offenses are felonies. The government respectfully submits that it is entitled to a detention hearing. 18 U.S.C. § 3142(f)(2)(A),(B). The government also submits that the defendant should be detained because no condition or combination of conditions will reasonably assure either his appearance or the safety of the community. 18 U.S.C. § 3142(e).

**A. The Government Is Entitled to a Detention Hearing.**

Congress empowered judicial officers to release or to detain defendants pending trial. 18 U.S.C. § 3141(a). Detention determinations proceed pursuant to the terms of 18 U.S.C. § 3142. Under § 3142(f)(2), the court must hold a detention hearing upon the government's motion when the case involves "a serious risk that [the defendant] will flee" or "a serious risk that [the defendant] will obstruct or attempt to obstruct justice … or attempt to threaten … a prospective witness or juror." 18 U.S.C. § 3142(f)(2). This determination is made under a preponderance standard. Here, a preponderance of the evidence demonstrates that the defendant poses both a serious flight risk and a serious risk that he will attempt to obstruct justice or threaten a witness or juror.

### 1. The Defendant Poses a "Serious Risk" of Flight.

The defendant poses a serious flight risk. 18 U.S.C. § 3142(f)(2)(A). His prior criminal history includes three arrests in the Massachusetts state system, where – with the exception of his current period in custody – he has never been imprisoned for more than a few weeks. Now, in addition to the time he is currently serving for his probation violations, the defendant faces five years in prison on each Indictment count. As multiple courts have noted, the more severe the sentence, the greater a defendant's incentive to flee. *United States v. Pierce*, 107 F. Supp. 2d 126, 128 (D. Mass. 2000); *see also United States v. Kakande*, No. 1:10-cr-00117-JAW, 2011 WL 1790639, *2 (D. Me. May 9, 2011) ("Generally, the longer the sentence the defendant is facing, the greater the incentive not to appear if released").

Moreover, the evidence against the defendant is substantial: It is a matter of public record that the defendant threatened those who work in the Plymouth County Courthouse and others who work for the Middlesex Sheriff's Office. The defendant recorded his threats and posted them to public websites, including YouTube and BitChute, where he called on law enforcement officers to assist in killing and injuring other public servants and in destroying public property. Ex. 1 (YouTube Video Titled "War Has Been Declared Fuck'em All). The fact that the defendant faces significant prison exposure and that the evidence against him is very strong creates a risk of flight.

In addition, the defendant has a history of violating court orders, including those that this court might issue to reduce his flight risk. At the time of the crimes alleged in the instant matter, the defendant was on probation for five charges in two separate criminal cases in which he admitted to witness intimidation, strangulation, assault, and battery. Those probation terms required him to refrain from other crimes. The defendant was not able to fulfill that requirement. Instead, a Grand Jury has already reviewed evidence and determined that there is probable cause to believe that the

defendant threatened people serving in the Plymouth County Courthouse and in the Middlesex Sheriff's Office while he was under the purview of two other criminal justice sentences. The defendant's current presence in Massachusetts custody is a direct result of his violations of those court orders. The defendant's history of failing to follow court orders creates additional risk of flight.

Finally, in April, a Massachusetts court found without prejudice that the defendant was incompetent to stand trial. This finding was informed by a recent mental health evaluation conducted at Bridgewater State Hospital. Dkt. No. 17 at 2. It was also supported by the defendant's statements in videos, emails, and state court proceedings. Dkt. No. 17 at 3-5. The fact that the defendant may be incompetent poses additional flight risk.[1]

Independently, each of these facts – the defendant's serious risk of long incarceration, his previous failure to follow court orders, and his recent finding of incompetence – demonstrates a risk of flight. When the factors are considered alone or in aggregate, that risk is a "serious" one. The government is entitled to a detention hearing on this basis.

### 2. The Defendant Poses a "Serious Risk" that He Will Obstruct Justice or Threaten a Witness or Juror.

Second, the defendant's previous obstructive and threatening acts give rise to "a serious risk that [he] will obstruct or attempt to obstruct justice … or attempt to threaten … a prospective

---

[1] In conjunction with the instant motion, the government is also moving this court to order a hearing to determine the competency of the defendant in the federal system. 18 U.S.C. § 4241(a); Dkt. No. 17. The defense has assented to that motion. In order to inform any decision that the court might make at such a hearing, the government has also moved that this court order a psychiatric or psychological examination of the defendant. 18 U.S.C. § 4241(b). For the purposes of such an examination, the court may commit the defendant to the custody of the Attorney General. 18 U.S.C. § 4247(b).

witness or juror." 18 U.S.C. § 3142 (f)(2)(B). The government is also entitled to a detention hearing on this basis.

There is a serious risk that the defendant will threaten witnesses or obstruct justice partly because of the defendant's recent criminal history. It includes his violating Massachusetts General Law chapter 268, section 13B, which prohibits the intimidation of witnesses in criminal proceedings. The conviction relates to a 2021 incident, which began with his assault and strangulation of a woman and ended with his taking her cell phone and car keys in order to prevent her from calling the police or leaving her home. The defendant admitted guilt on August 12, 2022, and was sentenced to one year of probation. This is an unusual case in which the defendant has previously been convicted of the crime at issue in this analysis. The fact that the defendant has previously intimidated witnesses increases the risk that he will do so again.

There is also serious risk that the defendant will threaten witnesses or obstruct justice because of his conduct in this case. The defendant is charged here with having threatened court personnel, including court security officers and others, with assault and worse. On the surface, the strong evidence supporting the defendant's current charges strengthens the argument that the defendant will threaten others, including witnesses or jurors, if he is released. However, the details of the conduct underlying those charges is even more instructive and persuasive: According to his video-recorded statements, at least part of the defendant's motive for making the instant threats was retribution for previous court processes and decisions that he considered unjust. *See* Dkt. No. 17 at 3-5. In other words, in this case, the defendant made his threats not merely because he didn't like someone but because he *wanted to obstruct justice*.

For example, the defendant's video clearly and repeatedly states that he intends to "burn" the Plymouth courthouse on the morning of his next appearance because he is displeased with the decisions made in his court cases. In one passage, the defendant states:

> I'm supposed to go to court on the 14th. And my attorney, Christopher Sheehan, is clearly just another bought and paid off fucking loser of the mob who's not doing his job. So guess what? You're fucking fired. Consider yourself fired. The DA? Guess what, buddy? You're fucking fired. The judge? Fuck you, bitch: You're fired. And the fucking idiot, fucking fat-assed, lazy fucking, retarded-looking court officers: Go fuck yourselves. OK? You have no idea what I'm coming to do to you people. I am going to burn that fucking courthouse down.

Ex. 1 at 7:21. Here, the defendant links his threats to "fire" the case's judge and attorneys and to "burn" the courthouse with the fact that, for example, his personal attorney is "not doing his job," which presumably means not achieving the results the defendant desires. This is another way of saying that the defendant is threatening those working on his case and in the criminal justice system generally because he disagrees with how his case is being adjudicated.

Indeed, shortly thereafter, the defendant more explicitly links his threats to assault court officers with his belief that the courthouse staff are "fucking over everybody." He states:

> I have walked in that courtroom for two and a half fucking years, smiling and being the nice guy that I am. I'm going to fucking punch out the fucking court officer at the fucking X-ray machine. I'm going to fucking light fire to the fucking back room with all of the fucking cocksuckers pushing fucking paperwork for a fucking paycheck knowing they're fucking over everybody. I'm going to fucking break the arms and legs of fucking every court officer in that building.

Ex. 1 at 9:04. Here, the defendant implies that the courthouse staff are making decisions with which he disagrees or perhaps knowingly participating in corruption. And at least partly for that reason, the defendant declares that he will "light fire to the fucking back room" and "break the arms and legs" of the court security personnel. *Id.* In other words, again, the defendant threatens

5

to assault people because of their participation in the justice system and to arson a public building because it is just that.

In the following minutes of the video, the defendant continues to emphasize that his purpose in destroying the courthouse is to "get justice" for himself and for others who have been wronged. Ex. 1 at 10:37. Specifically, he states:

> I don't care if I'm going alone. I'm going to roar in there at 100 fucking mph in my Shelby GT 500, and I am going to fucking burn that fucking place to the ground. And I'm gonna get justice. I'm getting justice for my daughter. I'm getting justice for Brandon. I'm getting justice for Holly. For Kensy. For Mallory. For me. For Teddy. For Sheriff DiPaola. I'm getting justice for every fucking American in this country who's fucking sick to death of our media lying to us, of our fucking corrupt politicians. I'm going to fuck you all up.

Ex. 1 at 10:37. Thus, as demonstrated by this language, the defendant issued his threats precisely because he wanted to "get justice" – or the outcome he deems just – from the administrators of the Massachusetts justice system. His method for doing so seems to be either threatening them so that they change their conduct or simply destroying the proceeding altogether. This is the definition of obstruction of justice. Thus, more than serving as a basis for his current charges, the defendant's threats also demonstrate a "serious risk" that the defendant will continue to obstruct justice or to threaten prospective witnesses or jurors serving in *this* case if he believes that *their* decisions are unjust. This is an unacceptable risk.

In conclusion, the defendant's admitted history of intimidating a witness and the nature of the instant threats, which were designed to obstruct justice, demonstrate a serious risk that the defendant will obstruct justice or threaten a witness or a juror if he is released here. On this basis, the government is entitled to a detention hearing.

**B. The Defendant Should Be Detained Pending Trial.**

After a hearing, the Court shall detain a criminal defendant pending trial upon determining that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community...." 18 U.S.C. § 3142(e); *United States v. Montalvo–Murillo*, 495 U.S. 711, 716–17 (1990). It is not necessary that the government prove both flight risk and danger to the community. Instead, it must prove only either risk of flight by a preponderance of evidence, *United States v. Patriarca*, 948 F.2d 789, 791-93 (1st Cir. 1991), or danger to the community by clear and convincing evidence. 18 U.S.C. § 3142(f). In evaluating whether conditions can reasonably be fashioned, the Court must consider: (1) the nature and circumstances of the offense; (2) the weight of the evidence; (3) the defendant's history and personal characteristics; and (4) dangerousness. 18 U.S.C. § 3142(g).

### 1. Nature and Circumstances of the Offense Charged

The seriousness of these offenses support detention. The defendant is currently charged with threatening to assault and kill court security officers, to assault and kill police officers, and to endanger everyone – including judges, attorneys, staff, and members of the public – who may be in a public courthouse. Moreover, his motive for threatening to harm at least some of these people seems to be that he disagrees with the actions they take in their professional capacity as public servants. The defendant made these threats electronically and at a time when he was on probation for many other crimes, including witness intimidation. This signals that, unless the defendant is detained, he has the potential to issue other threats, even under house arrest and even if this court orders him not to. This possibility creates an unacceptable risk of harm to the community.

### 2. Weight of the Evidence Against the Person

The government's evidence is strong. The defendant's video clearly shows his face and records his statements, whose depravity is obvious. Ex. 1. The Supreme Court recently held that

the government need only "show that the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence" to establish criminal liability for true threats. *Counterman v. Colorado*, 143 S. Ct. 2106, 2011-12 (2023). The Court further held that a mental state of recklessness is constitutionally sufficient. *Id.* at 2118. Here, the clarity of the defendant's statements meets and likely exceeds that standard. Indeed, as articulated above, it is the government's position that the defendant purposefully made his statements so that they *would be* threatening. That was the entire stated objective of his video and of his email: To lay out a plan for "get[ting] justice" and to recruit others to assist him.

In addition, forensic analysis shows that the defendant recorded this video on a desktop computer in his home and that this computer also accessed the email account that sent the threatening messages, which repeated the themes of the video and were signed with his name. Ex. 2 (Email to the Massachusetts Sheriffs' Association). It is well-documented that the mediums the defendant used to transmit these threats – both Yahoo email and YouTube video-file sharing – are methods that typically require interstate transmission, as they did in this instance. In sum, the government has ample evidence that the defendant violated 18 U.S.C. § 875(c), as he is charged.

### 3. History and Characteristics of the Person

Under this factor, a court considers, among other things, the defendant's physical and mental condition, his past conduct, and his criminal history. 18 U.S.C. § 3142(g)(3)(A). The court also considers whether, at the time of the current offense or arrest, the defendant was on probation for another offense under state, federal, or local law. 18 U.S.C. § 3142(g)(3)(B). In this case, these aspects of the defendant's history and characteristics demonstrate that he poses a danger to the community and is not likely to comply with release conditions.

To begin, as mentioned above and discussed in more detail in the government's Assented-To Motion to Determine the Mental Competency of the Defendant, the defendant seems to suffer from a mental disorder serious enough that a Massachusetts court recently found the defendant not competent to stand trial. *Supra* at 3; Dkt. No. 17. The government is not privy to the details regarding the defendant's state hospital diagnosis and has moved for a hearing here in the federal system. The government hopes that, if this hearing is ordered, all parties will become more informed about the implications of any disorder the defendant may have. However, at this time, at a minimum, the apparent presence of a mental disorder making him incompetent for trial increases the likelihood of his failure to appear.

Additionally, the defendant is a 42-year-old man with a violent criminal history and who was on probation at the time he committed and was arrested for the instant offenses. As mentioned above, when the defendant transmitted the videos and email messages at issue in this case, he was on probation in Massachusetts for five counts of assault and battery, strangulation, and witness intimidation. These counts were pending in two criminal cases lodged in Plymouth County District Court. They related to violent incidents that occurred in 2020 and 2021.

The first of these occurred on October 1, 2020, when the defendant attempted to punch a 13-year-old child. The defendant missed and then threw the child to the ground. When the child's mother intervened, the defendant threw her to the ground and began to drag her by her hair. The defendant was arrested and charged with two counts of assault and battery. The defendant admitted guilt to these charges in Plymouth District Court on August 12, 2022. He was sentenced to one year of probation and required to participate in a batterer's program.

The second case stems from events that occurred on February 9, 2021, when the defendant grabbed the phone from a woman and proceeded to threaten to kill the man on the other end of the

line. The defendant then put his hands around the woman's neck, strangled her, told her, "You're the reason men kill women," and said he should kill her. He slammed her into a window and a dresser. The defendant also then took the woman's cell phone and car keys in an effort to prevent her from calling the police or leaving their home. The defendant was arrested later that evening and found to be carrying a badge for the Billerica Police Department, with which he has never had an affiliation. The defendant was charged with assault and battery, strangulation, and witness intimidation. He admitted guilt in Plymouth District Court on August 12, 2022, and was similarly sentenced to one year of probation and participation in a program.

In sum, the defendant has a history of violence, of violating court orders, and appears to be suffering from a mental disorder. These aspects of his history and characteristics weigh against his release because they demonstrate both flight risk and danger to the community.

### 4. The Nature and Seriousness of the Danger Any Person or the Community

The defendant poses a danger to the community. With respect to this factor, the Senate Report accompanying the Bail Reform Act also explains that dangerousness is not limited to physical violence and includes continued criminal activity:

> The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence.

S. Rep. No. 225, 98th Cong., 1st Sess. 12 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3195; *see United States v. Tortora*, 922 F.2d 880, 884 (1st Cir. 1990) ("Danger, in this context, was not meant to refer only to the risk of physical violence.")

10

Although the Court cannot order the defendant's detention based on dangerousness alone, *see United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988), obstruction of justice is a stand-alone basis justifying detention pending trial. *See United States v. Acevedo-Ramos*, 755 F.2d 203 (1st Cir. 1985) (upholding detention before trial based on the risk that the defendant would obstruct or attempt to obstruct justice). As explained above, the defendant has previously committed witness intimidation and has, in this case, threatened public servants and institutions because he wishes to obstruct justice. If the defendant were released, there is nothing to suggest that he would not continue to attempt to obstruct justice prior to trial. Accordingly, and as contemplated in the Senate Report cited above, the defendant must be detained because he poses a danger to the integrity of this proceeding.

Moreover, there is nothing to suggest that the defendant would not continue to commit other crimes if he were released. The defendant has a history of violence. He has a pattern of representing himself as a peace officer when he is, in fact, no longer one. He also has a pattern of making threats, whose criminal harm is accomplished not when the threat is executed but rather when the listener fears that the threat will be carried out. Here, there is no combination of conditions that could adequately assure the court that the defendant will not continue to present himself as a peace officer or threaten others while he awaits trial. Both of these actions pose a danger to the community.

### C. CONCLUSION

Based upon the foregoing, the government is entitled to a detention hearing. Moreover, the government has met its burden to show that no conditions of release will reasonably assure the Defendant's appearance, the safety of any person or the community, or the integrity of this proceeding. Accordingly, the government requests the Court order the Defendant detained prior

to trial.  The government further requests that, if the Court is inclined to release the Defendant on conditions, it stay its order for such time as to permit the government to file a motion for revocation of the order of release under 18 U.S.C. § 3145(a).

                              Respectfully submitted,

                              JOSHUA S. LEVY
                              Acting United States Attorney

By:   */s/ Amanda Beck*
        Amanda Beck
        Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that these documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

           _/s/ Amanda Beck_____
           Amanda Beck
           Assistant United States Attorney

Date: October 10, 2023